UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | |
|---|---|---|
| AEROFLEX USA, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No.: 3:13-CV-485-TAV-CCS |
| | ) | |
| ARMACELL ENTERPRISE GMBH, | ) | |
| ARMACELL, LLC, and ARMACELL | ) | |
| UNITED STATES HOLDINGS, INC., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION

This civil action is before the Court on the Motion to Dismiss, Stay, or Transfer [Doc. 6] filed by defendants Armacell, LLC and Armacell United States Holdings, Inc. (the "defendants"). Plaintiff responded in opposition [Doc. 8], and defendants replied [Doc. 13]. The Court has thoroughly considered the arguments of the parties, the relevant documents and exhibits, and the controlling law. For the reasons stated herein, defendants' motion will be granted, and this case will be dismissed.

**I.      Background**

This case involves a dispute as to whether plaintiff's product, the "Cel-Link II," infringes upon United States Patent No. 6,902,784 (the "'784 patent"), which concerns an adhesive insulation structure and is owned by defendants [Doc. 7 pp. 5–7]. In 2010, defendants accused plaintiff of infringing upon the '784 patent on two occasions, and plaintiff ultimately agreed to suspend its activities relating to the product at issue in that

dispute [*Id.* at 6–7]. Defendants submit that plaintiff's patent application for that product was later rejected based on the existing '784 patent [Doc. 7 ex. 9]. Then, in 2013, defendants learned of the Cel-Link II, which they allege plaintiff "commenced actively marketing and selling" and which they contend infringes upon the '784 patent [Doc. 7 at 7]. Plaintiff, however, avers that it has not yet sold the Cel-Link II or offered it for sale, instead stating that it merely distributed specification pamphlets describing the product and adding that it has filed a patent application [Doc. 8 p. 4].

On August 5, 2013, defendants wrote a letter to plaintiff informing it of their concern that the Cel-Link II infringes upon the '784 patent. In this letter, defendants requested certain assurances and information by August 12, 2013, stating that they would determine whether to take legal action based on the "nature and content" of the responses and hoped for a prompt resolution of the matter [Doc. 7 ex. 9]. Instead of responding, plaintiff filed this declaratory judgment action on August 9, 2013, requesting that the Court declare that the Cel-Link II does not infringe upon the '784 patent and that the '784 patent is invalid and unenforceable [Doc. 8 p. 5]. In support of this action, plaintiff notes that its marketing and sale of the Cel-Link II has been hampered by defendants' allegations of patent infringement and that this action constitutes a "good faith" response to "the threat of litigation" [*Id.*].

Plaintiff asserts that defendants refused to waive service of process upon a related German entity, Armacell Enterprises, GmbH, that may be an interested party, resulting in plaintiff's reluctance to engage in settlement talks [*Id.* at 7]. Meanwhile, defendants

submit that Armacell Enterprises, GmbH is not an interested party and that they refuse to waive service of process upon this entity because: (1) plaintiff's present action is an improper forum-shopping exercise designed to increase its bargaining leverage in settlement talks; (2) plaintiff refused to discuss the merits of its position despite calling defendants' claims "frivolous"; and (3) plaintiff improperly named at least one entity as a defendant [Doc. 7 p. 8].

Defendants state that they delayed filing suit in order to facilitate settlement talks and tendered a settlement offer to plaintiff on September 18, 2013, though plaintiff's counsel had indicated that its principals would be out of the country until September 26 and therefore unable to participate in settlement discussions until at least that date [*Id.* at 9–10]. Ultimately, it appears plaintiff refused to engage in settlement discussions until defendants accepted service of process on behalf of Armacell Enterprises, GmbH, and defendants responded by stating that Armacell Enterprises, GmbH assigned all of its rights in the '784 patent to Armacell, LLC, a named defendant, making Armacell Enterprises, GmbH irrelevant to the present action [*Id.* at 10]. Additionally, defendants inquired as to the basis for plaintiff's position and conveyed to plaintiff their dissatisfaction with plaintiff's unwillingness to engage in settlement discussions, noting that they had refrained from filing their own patent infringement lawsuit in the hope that the dispute could be resolved amicably [*Id.*]. Plaintiff responded by stating that it wanted to take discovery to ensure that Armacell Enterprises, GmbH was not an interested party [*Id.*].

3

As a result, apparently feeling that negotiations had reached an impasse, defendants filed suit in the United States District Court for the Middle District of North Carolina on October 8, 2013 (the "North Carolina Action"), alleging patent infringement, false patent marking, unfair competition, false advertising, and violation of North Carolina's unfair and deceptive trade practices act [*Id.* at 11]. In light of that complaint, defendants request that this Court dismiss, transfer, or stay the instant matter so that the dispute with plaintiff may be litigated exclusively in the Middle District of North Carolina [*Id.* at 5]. Conversely, plaintiff requests that the Court deny the motion or, at the very least, hold it in abeyance until the court in the North Carolina Action rules upon its motion to dismiss defendants' claims there for improper venue. Defendants reply that venue is proper in North Carolina because plaintiff is subject to personal jurisdiction there, citing *Am.'s Collectibles Network, Inc. v. Scorpiniti*, No. 3:06-CV-270, 2007 WL 470351, at *4 (E.D. Tenn. Feb. 8, 2007) (noting that "venue in an infringement case exists where there is personal jurisdiction").

## II. Analysis

### A. Appropriateness of Declaratory Relief

"The Declaratory Judgment Act empowers the district court to entertain certain actions, but it does not compel it to exercise the jurisdiction thus granted to it." *Zide Sport Shop of Ohio, Inc. v. Ed Tobergte Assocs., Inc.*, 16 F. App'x 433, 437 (6th Cir. 2001). To this end, "'the propriety of declaratory relief in a particular case will depend upon a circumspect sense of its fitness informed by the teachings and experience

concerning the functions and extent of federal judicial power.'" *Wilton v. Seven Falls Co.*, 515 U.S. 277, 287 (1995) (quoting *Public Serv. Comm'n of Utah v. Wycoff Co.*, 344 U.S. 237, 243 (1952)).

The Sixth Circuit has adopted a five-factor test for determining whether a district court should exercise jurisdiction over a declaratory judgment action:

> (1) whether the judgment would settle the controversy;
>
> (2) whether the declaratory judgment action would serve a useful purpose in clarifying the legal relations at issue;
>
> (3) whether the declaratory remedy is being used merely for the purpose of procedural fencing or to provide an arena for a race for res judicata;
>
> (4) whether the use of a declaratory action would increase the friction between our federal and state courts and improperly encroach on state jurisdiction; and
>
> (5) whether there is an alternative remedy that is better or more effective.

*AmSouth Bank v. Dale*, 386 F.3d 763, 785 (6th Cir. 2004) (internal quotation marks omitted) (quoting *Scottsdale Ins. Co. v. Roumph*, 211 F.3d 964, 968 (6th Cir. 2000)). In addition, "[a] party's intention to preempt another's patent infringement suit may be considered in ruling on a dismissal of a declaratory action, but a court must also consider other factors." *Foundations Worldwide, Inc. v. Oliver & Tate Enters., Inc.*, No. 1:13CV506, 2013 WL 4054636, at *3 (N.D. Ohio Aug. 12, 2013).

The first factor does not weigh heavily in favor of allowing or dismissing plaintiff's declaratory judgment action. Though defendants point out that they have several unrelated claims in the North Carolina Action that would not be settled by a declaratory judgment in this matter [Doc. 13 p. 6], plaintiff notes that defendants could bring those claims as counterclaims in the present action [Doc. 8 p. 15]. In response to such arguments, the Sixth Circuit has held that "this . . . factor does not weigh heavily in favor of or against allowing these actions." *AmSouth Bank*, 386 F.3d at 786. Thus, the Court determines as much here.

Second, the Court must consider "whether the declaratory judgment action would serve a useful purpose in clarifying the legal relations at issue." *Id.* at 785 (citation and internal quotation marks omitted). Importantly, though plaintiff contends that a declaratory judgment would be useful in the sense that it would resolve the issue of infringement, "declaratory judgments do not serve a useful purpose where there is a pending coercive action, filed by the natural plaintiff, which encompasses all of the same issues as the declaratory judgment action." *Foundations Worldwide, Inc.*, 2013 WL 4054636, at *3 (citations, alterations, and internal quotation marks omitted). Put differently, "where a putative defendant files a declaratory action whose only purpose is to defeat liability in a subsequent coercive suit, no real value is served by the declaratory judgment except to guarantee to the declaratory plaintiff her choice of forum—a guarantee that cannot be given consonant with the policy underlying the Declaratory

6

Judgment Act." *AmSouth Bank*, 386 F.3d at 788. Therefore, the Court finds that this factor weighs in favor of dismissal.

Third, the Court must analyze "whether the declaratory remedy is being used merely for the purpose of 'procedural fencing' or 'to provide an arena for a race for res judicata.'" *Id.* at 785 (quoting *Scottsdale Ins. Co.*, 211 F.3d at 968). Defendants argue that plaintiff's conduct reveals that it intended to secure its choice of forum prior to engaging in settlement discussions, given that plaintiff filed the present action before responding to defendants' August 5 letter—and more specifically, one business day prior to the August 12 deadline mentioned in the letter [Doc. 7 p. 14]. Conversely, plaintiff submits that it did not mislead defendants in any way, as did the plaintiffs in some of the cases cited by defendants [Doc. 8 pp. 17–18]. Therefore, plaintiff argues, the third factor militates in its favor. Defendants reply that there is no requirement that plaintiff have misled defendants for the third factor to weigh in favor of dismissal and that the circumstances indicate plaintiff was forum shopping [Doc. 13 p. 8].

Concerning the third factor, the Sixth Circuit has stated:

> Courts take a dim view of declaratory plaintiffs who file their suits mere days or weeks before the coercive suits filed by a 'natural plaintiff' and who seem to have done so for the purpose of acquiring a favorable forum. Allowing declaratory actions in these situations can deter settlement negotiations and encourage races to the courthouse, as potential plaintiffs must file before approaching defendants for settlement negotiations, under pain of a declaratory suit.

*AmSouth Bank*, 386 F.3d at 788. Moreover, "'the Declaratory Judgment Act is not a tactical device whereby a party who would be a defendant in a coercive action may

7

choose to be a plaintiff by winning the proverbial race to the courthouse.'" *Id.* (quoting *Hyatt Int'l Corp. v. Coco*, 302 F.3d 707, 712 (7th Cir. 2002) (citation omitted)).

The circumstances in *Internet Transaction Solutions, Inc. v. Intel Corp.*, No. 2:06-CV-035, 2006 WL 1281654, (S.D. Ohio May 8, 2006), were similar to those here. More specifically, in that case:

> According to Intel, ITS improperly anticipated Intel's filing of a trademark infringement action and raced to the courthouse to litigate the claims in a forum it viewed as more favorable, and to obtain a procedural and negotiating advantage. Instead of responding to Intel's cease-and-desist letter inviting settlement discussions, ITS, just prior to the response deadline set by Intel, filed this declaratory judgment action. Intel argues that, under these circumstances, it would be contrary to public policy for the Court to exercise its discretion to decide ITS's declaratory judgment action. Intel argues that this would only encourage natural plaintiffs to sue first and talk later in order to preserve their choice of forum.

*Id.* at *4.

Despite acknowledging that ITS did not engage in misleading conduct, the court found that "[w]hen a declaratory judgment action is filed within the response period provided in a recent cease-and desist letter, it may be found that the plaintiff acted in bad faith." *Id.* at *7 (citation and internal quotation marks omitted). In support, the court stated that public policy militated in favor of dismissal because "[a]greeing to exercise jurisdiction over the declaratory judgment action, under these circumstances, would encourage trademark holders to immediately file trademark infringement actions without first attempting to resolve the dispute short of litigation." *Id.* Moreover, in response to

8

plaintiff's argument that it logically filed its action in its home forum and did not shop for a favorable forum, the court noted:

> whether the forum chosen by the declaratory plaintiff is 'logical' can have only a minimal value in determining whether procedural fencing has occurred. The question is not which party has chosen the better forum, but whether the declaratory plaintiff has filed in an attempt to get her choice of forum by filing first.

*Id.* (quoting *AmSouth Bank*, 386 F.3d at 789). Under the circumstances, the court answered that question in the affirmative and held that the third factor weighed heavily against exercising jurisdiction. *Id.*

Here, defendants sent plaintiff what amounted to a cease-and-desist letter requesting assurances and declarations and noting that defendants hoped to quickly resolve the matter, rather than merely filing a lawsuit. Instead of responding, however, plaintiff filed the present action. Under the circumstances, where plaintiff filed its action one business day before the deadline stated in defendants' letter and without responding to the letter, public policy dictates the Court's finding that plaintiff engaged in procedural fencing and forum shopping. Otherwise, patent holders like defendants would be incentivized to file infringement lawsuits without even attempting to resolve the dispute short of litigation. Plaintiff also notes that it understandably filed its action in its home forum, but as the Sixth Circuit has stated, this fact is of little consequence because the important consideration is that the circumstances indicate that plaintiff filed this action in an attempt to secure its choice of forum by filing before defendants. *AmSouth Bank*, 386 F.3d at 789.

9

Defendants are the natural plaintiffs in a patent infringement action, and they were attempting to resolve this dispute without litigation. To find that this factor weighs in favor of exercising jurisdiction in circumstances similar to those presented here would be to discourage attempts at settlement and wave the checkered flag in front of races to the courthouse. In light of the foregoing, the Court finds that the third factor weighs heavily against the Court exercising jurisdiction over plaintiff's action.

The fourth factor is inapplicable because both pending actions were filed in federal district courts.

Finally, the Court must consider "whether there is an alternative remedy that is better or more effective." *AmSouth Bank*, 386 F.3d at 785 (citation omitted). Defendants submit that the North Carolina Action is a much more effective avenue for resolving this matter, while plaintiff states that North Carolina is an unsuitable venue and that defendants could bring their pending claims in the North Carolina Action as counterclaims in this action.[1] "Clearly, it would be a waste of judicial resources to litigate this dispute in more than one forum." *Internet Transaction Solutions, Inc.*, 2006 WL 1281654, at *8. And importantly, "[t]he question in these circumstances is not the order in which the actions were filed, but which action will better serve the needs and convenience of the parties." *Foundations Worldwide, Inc.*, 2013 WL 4054636, at *4.

---

[1] Defendants rebut plaintiff's claim that venue is improper in North Carolina, and in any event, the Court declines to make such a determination.

When faced with similar circumstances, the Sixth Circuit has noted that "[t]he existence of a coercive action is important to our determination that this declaratory action would serve no useful purpose." *AmSouth Bank*, 386 F.3d at 791. This Court agrees that "the broader, coercive action filed in [North Carolina] will provide a more effective avenue for resolving this matter in its entirety." *Internet Transaction Solutions, Inc.*, 2006 WL 1281654, at *8. In support, as one district court surmised, "the fact that a coercive remedy has been invoked will help sharpen and refine the issues to be decided, which will include a full range of remedial measures." *Albie's Foods, Inc. v. Menusaver, Inc.*, 170 F. Supp. 2d 736, 740 (E.D. Mich. 2001). For example, plaintiff acknowledges that defendants could not bring their claim under the North Carolina unfair and deceptive trade practices act as a counterclaim in this action [Doc. 8 p. 11], and defendants aver that the North Carolina Action will move forward regardless of the Court's ruling on this motion and that they are "seeking redress in North Carolina that cannot be accomplished simply by litigating [plaintiff's] declaratory judgment claims." [Doc. 13 pp. 7, 9]. Such considerations reveal that entering a declaratory judgment in this action may not fully dispose of the relevant issues in dispute between the parties.

Accordingly, the Court finds that defendants' coercive action in North Carolina is likely a better or more effective remedy than the present action. More generally, three of the five factors weigh in favor of the Court declining to exercise jurisdiction over plaintiff's declaratory judgment action, and the other two factors are neutral.

11

Case 3:13-cv-00485-TAV-CCS   Document 19   Filed 02/20/14   Page 11 of 15   PageID #: 326

## B. First-to-File Rule

Plaintiff argues that the first-to-file doctrine favors this Court exercising jurisdiction over its declaratory judgment action, while defendants contend that this matter falls within an exception to this general rule. The Sixth Circuit has stated:

> The first-to-file rule is a well-established doctrine that encourages comity among federal courts of equal rank. The rule provides that when actions involving nearly identical parties and issues have been filed in two different district courts, 'the court in which the first suit was filed should generally proceed to judgment.'

*Zide Sport Shop of Ohio, Inc.*, 16 F. App'x at 437 (quoting *In re Burley*, 738 F.2d 981, 988 (9th Cir. 1984)). Yet, "[d]istrict courts have the discretion to dispense with the first-to-file rule where equity so demands. A plaintiff, even one who files first, does not have a right to bring a declaratory judgment action in the forum of his choosing[,]" and "[f]actors that weigh against enforcement of the first-to-file rule include extraordinary circumstances, inequitable conduct, bad faith, anticipatory suits, and forum shopping." *Id.*

Further, "the first-filed rule is not a strict rule and much more often than not gives way in the context of a coercive action filed subsequent to a declaratory action." *AmSouth Bank*, 386 F.3d at 791 n.8. In fact, "'[c]ases construing the interplay between declaratory judgment actions and suits based on the merits of underlying substantive claims create, in practical effect, a presumption that a first filed declaratory judgment action should be dismissed or stayed in favor of the substantive suit.'" *Certified Restoration Dry Cleaning Network, L.L.C. v. Tenke Corp.*, 511 F.3d 535, 552 (6th Cir.

12

2007) (citation omitted) (quoting *AmSouth Bank*, 386 F.3d at 791 n.8). Moreover, "[t]his exception to the first to file rule will be applied where the parties and issues are the same, or essentially so, and it appears that the first filed suit was brought in anticipation of forthcoming suit by the substantive plaintiff." *UAW v. Dana Corp.*, No. 3:99CV7603, 1999 WL 33237054, at *6 (N.D. Ohio Dec. 6, 1999).

The Court finds that this presumption in favor of discarding the first-to-file rule applies in this case. This finding is bolstered by the Court's determinations that plaintiff engaged in forum shopping and procedural fencing and that defendants' coercive action in North Carolina would be a more effective and useful avenue for resolving this dispute.

The Court acknowledges that the three-part test normally used in determining whether to apply the first-to-file rule counsels in favor of exercising jurisdiction over this action, given that plaintiff's declaratory judgment action was filed first and involves similar parties and issues as the North Carolina Action. Yet, the aforementioned cases make clear that when faced with a declaratory judgment action and a coercive suit concerning the underlying issues, the presumption is in favor of dismissing or staying the declaratory action. Thus, the instant matter presents an exception to the general case that would be evaluated under the three-part test.

Plaintiff submits that this Court's holding in *SNMP Research, Inc. v. Avaya, Inc.*, No. 3:12-CV-117, 2013 WL 474846 (E.D. Tenn. Feb. 7, 2013), warrants invocation of

13

the first-to-file doctrine.[2]   But, *SNMP Research, Inc.* is distinguishable.  In that case, this Court emphasized that the first-filed lawsuit in the District of Delaware did not justify discarding the first-to-file rule because "[the plaintiff in the first-filed suit] did not file its suit until after negotiations [between the parties had proved unsuccessful]." *SNMP Research, Inc.*, 2013 WL 474846, at *6.  Here, the Court finds that plaintiff engaged in forum shopping and procedural fencing, if not bad faith.  *See Internet Transaction Solutions, Inc.*, 2006 WL 1281654, at *7 (holding that "[w]hen a declaratory judgment action is filed within the response period provided in a recent cease-and desist letter, it may be found that the plaintiff acted in bad faith").

Moreover, in *SNMP Research, Inc.*, the Court noted that piecemeal litigation of the parties' dispute would not be in the interests of justice, thus finding that this factor counseled in favor of transferring the action to the court where it was first filed.  *Id.* at *5.  Exercising jurisdiction over this action would create a distinct possibility of piecemeal disposition of the dispute between the parties, given defendants' additional claims in North Carolina.  Therefore, the Court finds that the present circumstances differ materially from those in *SNMP Research, Inc.* and that the nature of plaintiff's conduct and potential for piecemeal litigation—which supported transferring that case—favor dismissal here.

---

[2] The parties also dispute whether this action constitutes an "anticipatory suit" as discussed in *SNMP Research, Inc.*, but given the aforementioned case law and the Court's finding that plaintiff engaged in forum shopping and procedural fencing, the Court need not address this argument.

14

Consequently, and in light of the aforementioned facts and law, the Court declines to apply the first-to-file rule in this case and will decline to exercise jurisdiction over this action.

### III.   Conclusion

For the reasons explained herein, the Court will **GRANT** the Motion to Dismiss, Stay, or Transfer [Doc. 6] filed by defendants Armacell, LLC and Armacell United States Holdings, Inc., and this action will be **DISMISSED**.

ORDER ACCORDINGLY.

s/ Thomas A. Varlan
CHIEF UNITED STATES DISTRICT JUDGE